UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS MENDIOLA-PONCE,<br><br>    Plaintiff,<br><br>    v.<br><br>GARY SWARTHOUT,<br><br>    Defendant. | No. 2:12-cv-0817 AC P<br><br><br><br>ORDER |

Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the validity of his 2009 Yolo County conviction for gross vehicular manslaughter while intoxicated. ECF No. 1. Respondent has answered. ECF No. 9. Petitioner has failed to file a reply, and the time for doing so has expired. The parties have consented to the jurisdiction of the undersigned. ECF Nos. 4, 8.

## BACKGROUND

### The Trial

The prosecution presented evidence of the following facts. On the night of August 9, 2008, petitioner and his brother-in-law, Martin Ledesma, went out to a bar to see a band perform. At the bar, according to Ledesma, a drunken Fabian Perez approached petitioner several times and picked a fight. At around midnight, petitioner and Ledesma left to go home. Perez followed the two out of the bar and got into the front passenger seat of petitioner's Jeep Cherokee.

1

Petitioner got into the driver's seat, and Ledesma got into the driver's side rear passenger seat. Although petitioner and Ledesma had never met Perez before that night, they decided to give Perez a ride home because they were worried he would get into other fights at the bar.

Once on the road, Perez wanted to go to another bar. Petitioner refused because both he and Ledesma had to work in the morning. Ledesma testified that Perez started to argue with petitioner, who did not pay any attention to him. Perez then reached over and grabbed the steering wheel. The Jeep veered west and crashed into a tree, then rolled onto its roof.

Francisco Martinez drove by the accident, called 911, and got out of his car to help. Ledesma told Martinez that petitioner fell asleep while driving. Both petitioner and Ledesma were airlifted to UC Davis Medical Center. Petitioner's blood was drawn, and his blood-alcohol level later came back as 0.094 percent. Perez was pronounced dead at the scene and his blood-alcohol level was later determined to be 0.23 percent.

The defense presented a traffic reconstruction expert who testified that the physical evidence established the steering wheel was being turned significantly to the right immediately before the brake application that caused a "locked wheel skid" into the tree.

The jury found petitioner not guilty of murder (Count 1), and guilty of gross vehicular manslaughter while intoxicated (Count 2), driving under the influence of alcohol causing injury (count 3), driving with a blood-alcohol level above 0.08% causing injury (Count 4), and driving without a valid driver's license (Count 5). The jury also found all the enhancement allegations true. The court sentenced defendant to 15 years to life for gross vehicular manslaughter while intoxicated, and dismissed counts 3 and 4 as being necessarily included within the manslaughter conviction. The court further sentenced defendant to a concurrent term of 90 days for driving without a valid driver's license and a total of 360 days for probation violations.

Post-Conviction Proceedings

Petitioner appealed his conviction on instructional error grounds. See Lodged Doc. 1. The California Court of Appeal for the Third Appellate District affirmed in an unpublished opinion on May 10, 2011. Lodged Doc. 4. The California Supreme Court denied review on July

15, 2011.[1]  Petitioner filed no applications for collateral relief in the state courts.

The federal petition for writ of habeas corpus was filed in this court on March 30, 2012.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 131 S. Ct. 770, 785 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. at 784-785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Clearly established federal law also includes "the legal principles and standards flowing from precedent." Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir. 2002) (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)). Only Supreme Court precedent

---

[1] The petition states that petitioner filed a petition for certiorari in the United States Supreme Court, which was denied on November 14, 2011.  The lodged state court record does not include this document.  The federal petition is timely with or without reference to the petition for certiorari.

may constitute "clearly established Federal law," but circuit law has persuasive value regarding what law is "clearly established" and what constitutes "unreasonable application" of that law. Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044, 1057 (9th Cir. 2004).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 131 S. Ct. at 786.

## DISCUSSION

Petitioner presents a single claim for relief, which was exhausted on direct appeal: violation of due process by defective causation instructions.

I.   Background of Claim

At trial, the court instructed the jury as to gross vehicular manslaughter while intoxicated, and lesser included offenses, using CALCRIM Nos. 510, 590, 591, 592, and 593. The court gave

oral instructions along with providing copies of the written instructions to the jury for deliberations.

The written causation instruction contained in each of CALCRIM Nos. 590, 591, 592 and 593, all of which were provided to the jury, states:

> An act causes death if the death is the direct, natural, and probable consequence of the act and death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence.
>
> There may be more than one cause of death. An act causes death only if it is a substantial factor in causing the death. A substantial factor is more than a trivial or remote factor. However, it does not need to be the only factor that causes death.

CT 383-85.[2]

Defense counsel requested that the court read the written instructions rather than paraphrasing. The court indicated it would paraphrase when it encountered awkward written language and further welcomed counsel to read the text during his closing argument, whether it was the same or different than that given by the court. The court concluded any misreading would be curable by the ability of counsel to comment on the instructions. RT 649-50.[3]

The causation instruction given orally as to Count 1 (murder) was as follows:

> An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act.
>
> A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence.
>
> There may be more than one cause of death. An act causes death only if it is a substantial factor in causing the death. A substantial factor is more than a trivial or remote factor. However, it does not need to be the only factor that causes the death.

RT 672.

---

[2] "CT" refers to the Clerk's Transcript on Appeal, lodged on June 14, 2012.
[3] "RT" refers to the Reporter's Transcript on Appeal, lodged on June 14, 2012.

1    During its oral recitation of CALCRIM No. 590, which deals with gross vehicular
2  manslaughter, the court instructed the jurors as to vehicular manslaughter and unexpected
3  emergency situations and then, rather than reading the instruction as written, referred the jury to
4  the previously given murder instruction about natural and probable consequences and acts
5  constituting a substantial factor in the victim's death.  The court explained, "I'm going to tell you
6  now that this is one of those areas where the same statement regarding how an act may cause
7  death is direct, natural and probable consequence as I read you in the murder instruction, and it
8  applies to this one, as well.  The same thing about there being possibly more than one cause of
9  death." RT 675.
10    When it came to causation related to lesser included offenses, the court again referred the
11  jury back to the instructions dealing with sudden and unexpected emergencies and natural and
12  probable consequences of defendant's acts.  RT 678, 679, 681.  Following instruction on the
13  lesser included offenses, the court elaborated on its previous instructions:

> This next instruction talks about other possible contributing factors. It starts off with the same description of how an act causes death if it is [a] direct and natural consequence of the act. It goes on with the rest of that instruction you heard before, but I'm going to now add that the failure of Fabian Perez or another person to use reasonable care may have contributed to the death, but if the defendant's act was a substantial factor causing the death, then he is legally responsible for the death even though Fabian Perez or another person may have failed to use reasonable care. [¶] If you have a reasonable doubt whether his act caused the death, you must find not guilty.

20  RT 682.
21    Defense counsel never interjected during the court's reading of the instructions.  During
22  closing argument counsel said, "I was almost falling asleep during the jury instructions.  They are
23  incredibly complicated. . . . That's just the way it is." RT 716-17.  Defense counsel also stated,
24  "… there are some instructions about types of things that can cause accidents and whether they
25  are at fault. [¶] Nobody foresees someone grabbing at the wheel." RT 733.
26    Petitioner alleges here as he did on appeal that the jury instructions were confusing and
27  unclear, that the court failed in its sua sponte duty to instruct the jury on independent intervening
28  cause, and that the court erroneously instructed the jury that the victim's failure to use reasonable

care might have contributed to his death but did not absolve defendant of legal responsibility if defendant's act was a substantial factor causing death.

## II. The Clearly Established Federal Law

Erroneous jury instructions do not support federal habeas relief unless the infirm instruction so infected the entire trial that the resulting conviction violates due process. Estelle v. McGuire, 502 U.S. 62, 72 (1991) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)). See also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional right]'"). The challenged instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record overall. Estelle, 502 U.S. at 72. Moreover, relief is only available if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. Id. at 72–73.

Errors of state law do not present constitutional claims cognizable in habeas. Pulley v. Harris, 465 U.S. 37, 41 (1984).

## III. The State Court's Ruling

Because the California Supreme Court denied review without comment, this court "looks through" the denial to the opinion of the California Court of Appeal. See Ylst v. Nunnemaker, 501 U.S. 797 (1991). As the last reasoned state court decision on the merits, the opinion on appeal is the state court adjudication that must be reviewed for reasonableness under 28 U.S.C. § 2254(d). Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012). The appellate court ruled as follows:

> *The Court's Instructions Were Neither Confusing Nor Unclear*
>
> First, defendant argues that "[t]he trial judge's confusing and unclear charges denied clear and simple instructions."
>
> In determining whether error was committed by giving or not giving an instruction, it is important to consider the instructions as a whole and to assume the jurors are intelligent persons capable of understanding and correlating all instructions given. (People v. Guerra (2006) 37 Cal.4th 1067, 1148.) Furthermore, there is a presumption that "the correctness of jury instructions is to be

determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." (People v. Estep (1996) 42 Cal.App.4th 733, 738-739.) Here, the trial court specifically instructed the jury that all instructions should be considered as a whole and in light of all others. (CALCRIM No. 200.)

Defendant asserts that "the trial court instructions were confusing and unclear when some of the written instructions were not included in the oral instructions and some of the oral instructions were paraphrased or referred back to other instructions." Defendant contends that the judge confused the jurors when he referred them to an oral causation instruction given during the murder charges [footnote omitted], instead of repeating the causation instruction for the manslaughter charges [footnote omitted]. The referenced oral instruction contains the exact language contained in the manslaughter written instructions pertaining to causation. Further, the jury was given a written copy of the instructions to use during deliberations. "'It is generally presumed that the jury was guided by the written instructions.'" (People v. Rodriguez (2000) 77 Cal.App.4th 1101, 1112-1113.) "Consequently, as long as the court provides accurate written instructions to the jury to use during deliberations, no prejudicial error occurs from deviations in the oral instructions." (Id. at p. 1113.)

Defendant, however, contends that accurate written instructions were not given to the jury to use during deliberations. More specifically, he argues that the instructions were confusing because "[j]urors should be instructed in clear and simple language rooted in the doctrine of foreseeability, not unclear and confusing statements on the doctrine of proximate cause." Defendant cites People v. Hebert (1964) 228 Cal.App.2d 514 to support his contention. In Hebert, the court held that the trial court made the issue of proximate cause confusing by including in the instructions the language "natural and continuous sequence," "efficient intervening cause," and "necessarily sets in operation the factors that accomplish the result." (Id. at p. 520.) Here, the causation instruction's first paragraph explained what it means to be a natural and probable consequence of defendant's acts. The second paragraph deals with what constitutes a substantial factor of the victim's death. In no part of this instruction does the language include the phrasing held to be confusing in Hebert.

Further the jurors were "instructed in clear and simple language rooted in the doctrine of foreseeability, not unclear and confusing statements on the doctrine of proximate cause." The jurors were instructed that "[a] natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes." The phrase "likely to happen" is "clear and simple language" explaining the concept of foreseeability. Since accurate written instructions were provided to the jury and are the ones we presume the jury used, the court did not err when some of the written instructions were not included in the oral instructions and some of the oral instructions were paraphrased or referred back to other instructions. [Footnote omitted.]

8

*The Court Adequately Instructed The Jury On Independent Intervening Cause*

Next, defendant argues that "the trial court erroneously failed in its sua sponte duty to instruct the jury on independent intervening cause." Defendant's argument lacks merit.

"A court must instruct sua sponte on general principles of law that are closely and openly connected with the facts presented at trial." (People v. Ervin (2000) 22 Cal.4th 48, 90.) Defendant contends that the trial judge was obligated to instruct on independent intervening cause because the matter was at issue since the victim's grabbing of the steering wheel was an independent intervening cause. "A court is required to instruct on the law applicable to the case, but no particular form is required; the instructions must be complete and a correct statement of the law. [Citation.] The meaning of instructions is tested by 'whether there is a "reasonable likelihood" that the jury misconstrued or misapplied the law in light of the instructions given, the entire record of trial, and the arguments of counsel.' [Citation.]" (People v. Fiu (2008) 165 Cal.App.4th 360, 370.)

The relevant law provides that, "an 'independent' intervening cause will absolve a defendant of criminal liability. [Citation.] However, in order to be 'independent' the intervening cause must be 'unforeseeable . . . an extraordinary and abnormal occurrence, which rises to the level of an exonerating, superseding cause.' [Citation.] On the other hand, a 'dependent' intervening cause will not relieve the defendant of criminal liability. 'A defendant may be criminally liable for a result directly caused by his act even if there is another contributing cause. If an intervening cause is a normal and reasonably foreseeable result of defendant's original act the intervening act is "dependent" and not a superseding cause, and will not relieve defendant of liability. [Citation.] "[] The consequence need not have been a strong probability; a possible consequence which might reasonably have been contemplated is enough. [] The precise consequence need not have been foreseen; it is enough that the defendant should have foreseen the possibility of some harm of the kind which might result from his act."'" (People v. Funes (1994) 23 Cal.App.4th 1506, 1523.)

Here, the court instructed the jury as follows:

"An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established be the evidence.

"The failure of Fabian Perez or another person to use reasonable care may have contributed to the death. But if the defendant's act was a substantial factor causing the death, then the defendant is legally responsible for the death even though Fabian Perez or another person may have failed to use reasonable care. If you have

9

a reasonable doubt whether the defendant's act caused the death, you must find him not guilty."

This instruction correctly informed the jury that liability would not be cut off for an intervening act if the victim's death was nevertheless a "direct, natural, and probable consequence" of defendant's original act. (People v. Fiu, supra, 165 Cal.App.4th at p. 372.) Further, defense counsel commented on the instructions and argued to the jury that Perez's action of grabbing the steering wheel was unforeseeable; thereby arguing that something unusual intervened to cut off defendant's responsibility. Since the jury was correctly instructed on the applicable legal principles, "'[a] party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.'" (Id. at p. 370.) Defense counsel never requested clarifying or amplifying language, therefore the court did not have a duty to deliver a more detailed instruction pertaining to independent intervening cause.

*The Court Adequately Instructed The Jury On Foreseeability*

Finally, defendant argues that, "[t]he trial court erroneously instructed the jury that Fabian Perez's failure to use reasonable care may have contributed to his death, but did not absolve defendant of legal responsibility if [defendant]'s act was a substantial factor causing death." Basically, defendant argues that the court erred because it instructed on substantial factor, but ignored the requirement of foreseeability. This, defendant argues, allowed the jury to convict based only on whether defendant's act was a substantial factor of Perez's death and not whether Perez's death was a foreseeable result of defendant's act.

As stated above, in determining whether error was committed by giving or not giving an instruction, it is important to consider the instructions as a whole and to assume the jurors are intelligent persons capable of understanding and correlating all instructions given. (People v. Romo (1975) 47 Cal.App.3d 976, 990.) In his argument, defendant takes issue with the trial court's instructions drawn from CALCRIM No. 620 contending that "[t]he instruction erroneously disregarded, ignored, and conflicted with foreseeability" because it allowed the jury to convict based on whether defendant's act was a substantial factor of Perez's death. Defendant is mistaken because the court did, in fact, instruct on foreseeability.

The instruction about which defendant complains does not start with the notion that defendant is liable as long as he was a substantial factor in the victim's death. Instead, the language first instructs the jury on what it means to be the cause of death. The jury was initially told that "[a]n act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes."

10

> This portion of the instruction informs the jury that a reasonable person would know Perez's death is likely to occur if nothing unusual intervenes, i.e., it is foreseeable. The language from CALCRIM No. 620 then goes on to say that regardless of Perez's unreasonableness, defendant is still responsible if his act was a substantial factor contributing to Perez's death. Taken together, these instructions not only inform the jury that defendant's act must have been a substantial factor contributing to Perez's death, but that Perez's death must also have been a foreseeable consequence of defendant's substantial act. Because the court instructed on natural and probable consequences of defendant's act, the court did instruct the jury on foreseeability and the court did not err.

Lodged Doc. 4, pp. 6-14.

IV.     Objective Unreasonableness Under 28 U.S.C. § 2254(d)

The state court did not unreasonably apply any due process principles clearly established by the U.S. Supreme Court.[4] No clearly established federal law specifies a causation standard that is constitutionally required in a homicide case, and the record as a whole does not support a conclusion that the challenged instruction "so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. at 147.

In Henderson v. Kibbe, 431 U.S. 145, 154 (1977), the Supreme Court rejected a due process challenge to the trial court's failure to give a causation instruction. Henderson involved the second-degree murder conviction of co-defendants who had robbed an intoxicated man in their car, and then abandoned him on the side of the road during a snowfall. The victim was struck and killed by a speeding car twenty to thirty minutes later. The jury was not specifically instructed as to causation. The Court held that due process was not violated because the issue of causation had been argued by the parties, the elements of the offense – including that the defendants' conduct caused the victim's death – had been read to the jury, and the jury had been instructed that they must find every element beyond a reasonable doubt. Here, petitioner's role in the traffic fatality was more direct than that of the defendant in Henderson, and petitioner's jury

---

[4] Although the California Court of Appeal did not expressly refer to Estelle v. Gamble, supra, Cupp v. Naughten, supra, or Donnelly v. DeChristoforo, supra, that fact does not affect the application of the AEDPA standard. See Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam) (state may comply with the AEDPA standard without even being aware of governing Supreme Court decisions, so long as ruling does not contradict them).

was given greater guidance on the causation issue. If the facts of <u>Henderson</u> do not present a due process violation, therefore, it cannot have been objectively unreasonable for the state court to find no due process violation here.

"Due process requires that jury instructions in criminal trials give effect to the prosecutor's burden of proving every element of the crime charged beyond a reasonable doubt. . . 'Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.'" <u>Townsend v. Knowles</u>, 562 F.3d 1200, 1209 (9th Cir. 2009) (quoting <u>Middleton v. McNeil</u>, 541 U.S. 433, 437 (2004) (per curiam)). Here, petitioner's jury was instructed that it must find every element of the charged offenses beyond a reasonable doubt. RT 659-70; CT 376. The jury was properly instructed on those elements, including the requirement that the defendant have caused the victim's death. E.g., RT 382 (conviction for vehicular manslaughter while intoxicated requires proof that "defendant's grossly negligent conduct cause the death of another person"). The issues of causation and the respective roles of petitioner's conduct and the victim's conduct in causing the fatal crash were addressed throughout the presentation of evidence and argued to the jury. On this record, it was not objectively unreasonable of the state court to reject petitioner's due process arguments.

Moreover, the state court held that the jury had been instructed correctly on causation as a matter of substantive California criminal law. That determination is unreviewable on federal habeas review. <u>See</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2006) (state court's interpretation of state law binds federal court sitting in habeas corpus); <u>Waddington v. Sarausad</u>, 555 U.S. 179, 192 n.5 (2009) ("… we have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions'"). This principle, in combination with the stringent standard for relief established by the AEDPA, bars relief here. <u>See</u> <u>Waddington v. Sarausad</u>, 555 U.S. at 190-97 (rejecting under AEDPA standards a claim that inadequate jury instructions on accomplice liability violated due process).

V.    <u>Certificate of Appealability</u>

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or a deny a certificate of appealability when it

enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. Fed. R. App. P. 22(b). For the reasons set forth herein, petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, no certificate of appealability should issue.

Accordingly, IT IS HEREBY ORDERED that:

1. The petition for writ of habeas corpus (ECF No. 1) is denied; and
2. This court declines to issue a certificate of appealability.

DATED: August 18, 2014

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE